UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Annette Williams and all others
similarly situated,

      Plaintiffs,

  v.

the City of Minneapolis, Officers John
Doe 1-100,

      Defendants.

Case No. 20-CV-1303 (DSD/BRT)

**MEMORANDUM OF LAW IN
SUPPORT OF MOTION TO
DISMISS BY DEFENDANT
CITY OF MINNEAPOLIS**

---

Plaintiff alleges that she, along with other protestors, were subjected to chemical irritant sprayed by an unnamed John Doe Minneapolis Police Department ("MPD") officer out of the officer's squad car window on May 28, 2020. The City of Minneapolis (the "City"), however, cannot be held liable merely because the John Doe may be employed by the MPD. The City may only be held liable for its own conduct. Plaintiff's complaint fails to plead sufficient facts to hold the City liable under any of her express claims or to hold the City liable under a *Monell* claim. Plaintiff also purports to bring a class action suit on behalf of all peaceful protestors who have been injured by the Defendants actions. The putative class members do not have standing to pursue equitable relief, and the allegations asserted are incompatible with class certification. Therefore, the City

respectfully moves the Court to dismiss the City from this lawsuit and dismiss the class allegations in the complaint in their entirety.

## FACTS

The City accepts as true the complaint's allegations solely for the purpose of this motion.

## I.   A SINGLE INCIDENT ALLEGING USE OF FORCE

The May 25, 2020 death of George Floyd sparked mass protests across the country. (ECF 1 at ¶ 1.) Plaintiff alleges that she participated in one such protest in Minneapolis on May 28, 2020. (*Id.* at ¶ 2.) According to Plaintiff, while she was protesting, an unidentified member of the MPD drove by and sprayed chemical irritant out of the driver's side window of a squad car near or around her and other protestors. (*Id.* at ¶¶ 2, 3.) Plaintiff alleges that exposure to the chemical irritant at the time caused her to cough uncontrollably. (*Id.* at ¶¶ 8, 9.) This May 28, 2020 incident is the only incident involving the use of force against Plaintiff *or any other purported protestors* that is specifically alleged in the complaint.

## ARGUMENT

## I.   STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(6) tests whether the plaintiff has pleaded a cognizable claim.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is

plausible on its face." *Wartman v. United Food & Commercial Workers Local 653*, 871 F.3d 638, 640 (8th Cir. 2017). A claim is facially plausible if its factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Braden v. Wal–Mart Stores, Inc.,* 588 F.3d 585, 594 (8th Cir. 2009).

"[A] Complaint need not contain 'detailed factual allegations,' but 'it must contain facts with enough specificity 'to raise a right to relief above the speculative level.'" *Minnesota Majority v. Mansky*, 708 F.3d 1051, 1055 (8th Cir. 2013) (quoting *Bell Atl. Corp. v. Twom*bly, 550 U.S. 544, 555 (2007)). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). Indeed, the court is "free to ignore legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations." *Wiles v. Capitol Indem. Corp.*, 280 F.3d 868, 870 (8th Cir. 2002).

## II.   THE COMPLAINT DOES NOT ALLEGE ANY COGNIZABLE CLAIMS AGAINST THE CITY AND, ACCORDINGLY, THE CITY SHOULD BE DISMISSED FROM THIS SUIT.

### A.   Plaintiff's *Monell* claim fails as a matter of law.

The City cannot be held liable merely because a John Doe is purportedly employed by the MPD. *Bolderson v. City of Wentzville, Missouri*, 840 F.3d 982, 985 (8th Cir. 2016). Indeed, even if the Court assumes that the complaint sufficiently

alleges that the MPD John Doe's alleged use of chemical irritant amounts to unlawful retaliation or unlawful force against Plaintiff, that alone does not support an allegation of liability against the City. *Bd. of Cnty. Com'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 406–07 (1997) ("That a plaintiff has suffered a deprivation of federal rights at the hands of a municipal employee will not alone permit an inference of municipal culpability and causation; the plaintiff will simply have shown that the *employee* acted culpably.") (emphasis in original); *Dahl v. Rice County, Minn.*, 621 F.3d 740, 743–44 (8th Cir. 2010) (without evidence that sheriff's alleged assault of plaintiff arose from county policy or custom, plaintiff's First Amendment claims against the county fail).

Rather, the City may only be held liable if its own conduct served as the moving force behind the Plaintiff's alleged constitutional violations. *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 690–91 (1978). "Liability for a constitutional violation will attach to a municipality only if the violation resulted from an official municipal policy, an unofficial custom, or a deliberately indifferent failure to train or supervise an official or employee." *Bolderson*, 840 F.3d at 985; *Atkinson v. City of Mountain View*, 709 F.3d 1201, 1214 (8th Cir. 2013). To the extent that Plaintiff attempts to keep the City in this suit based on her *Monell* claim, the complaint fails.

### 1. Plaintiff's complaint fails to allege unconstitutional policies.

4

The complaint fails to establish that a City policy was the moving force behind the purported constitutional violations.  A municipality is liable under Section 1983 only where its policy is the moving force behind a constitutional violation.  *Slaven v. Engstrom*, 848 F.Supp.2d 994, 1002 (D. Minn. 2012) (citing *Monell*, 436 U.S. at 694–95).  A "policy" is an official policy, a deliberate choice of a guiding principle, or procedure made by the municipal official who has final authority regarding such matters.  *Mettler v. Whitledge*, 165 F.3d 1197, 1204 (8th Cir. 1999).  Only "deliberate" actions by a municipality can meet the "moving force" requirement.  *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. at 400.

Here, Plaintiff's complaint does not cite to a single official City policy that she alleges to be unconstitutional. Rather, Plaintiff merely offers the formulaic allegation that the City and the John Doe Defendants "acted under color of law…of a statute, ordinance, regulation, resolution, policy, custom or usage when they deprived Plaintiff of his [sic] Constitutional rights, privileges, and immunities." (ECF Doc. at ¶ 45.)  However, such a generic recitation of elements, absent any factual allegations, is insufficient to survive a motion to dismiss. Any unstated inferences or sweeping conclusions that any John Doe defendant was acting under an unconstitutional policy should be rejected on this Rule 12 motion.  *Wiles*, 280 F.3d at 870.

To support any theory of liability under a generous reading of the complaint one would have to infer that Plaintiff is basing her *Monell* claim solely on the MPD's purported "lack" of policy regarding retaliatory conduct by officers. (ECF 1 at ¶ 43(b)(iii).)   Absence of policy direction alone, however, does not create *Monell* liability. *Whitney v. City of St. Louis, Missouri*, 887 F.3d 857, 861, n. 5 (8th Cir. 2018) ("We also note that a failure to implement a specific policy does not equate to a failure to adopt a constitutionally adequate policy."); *Atkinson v. City of Mountain View, Mo.*, 709 F.3d 1201, 1216 (8th Cir. 2013) (explaining that the absence of a binding, written policy that "would have prevented an unconstitutional act by an employee otherwise left to his own discretion" is insufficient to impose municipal liability); *see also Pitts v. Ramsey County*, 2018 WL 3118437, at *9 (D. Minn. May 25, 2018) (granting City's motion to dismiss *Monell* claim based on the absence of a policy, specifically an alleged "failure to have and maintain a . . . policy to protect citizens from police physical abuse"). As such, any attempt by Plaintiff to sustain a *Monell* claim based on a purportedly unconstitutional policy, or lack thereof, must be dismissed.

### 2. *Plaintiff's complaint fails to plead sufficient facts to sustain an unlawful custom claim.*

In addition to failing to allege an unconstitutional policy, the complaint fails to allege sufficient facts to establish that the City had any unlawful custom that

could give rise to *Monell* liability. To establish the existence of a municipal "custom," a plaintiff must show:

(1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;

(2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and

(3) Th[e] plaintiff['s] injur[y] by acts pursuant to the governmental entity's custom, i.e., [proof] that the custom was the moving force behind the constitutional violation.

*Ware v. Jackson County,* 150 F.3d 873, 880 (8th Cir. 1998). Plaintiff's complaint fails to establish these elements.

In fact, Plaintiff's complaint fails to specifically identify *any* alleged unlawful custom. At best, reading the complaint generously, Plaintiff appears to suggest broadly that the MPD had a custom of using excessive force and retaliation against protestors. Inexplicably, however, Plaintiff does not cite to *any* other specific instances of the use of force or retaliation against protestors other than her incident on May 28, 2020. Instead, Plaintiff appears to base her unlawful custom claim on a purported "corral and combat" strategy that she alleges was used "in numerous instances throughout the city" following the death of George Floyd, in which law enforcement officers concentrate protestors from opposing directions for the purpose of using force on them. (*Id.* at ¶¶ 12-14.) Plaintiff's complaint,

however, does not allege a single specific instance of the "corral and combat strategy" being implemented, nor does she allege that she herself was the subject of any such law enforcement tactic.  From the complaint, Plaintiff appears to have been volitionally on a public sidewalk.  (*Id*. at ¶ 2.)

Plaintiff's generic allegations regarding the purported use of the "corral and combat" tactic are patently insufficient to establish the existence of a widespread and persistent pattern. For a municipality "to be held liable on the basis of custom, there must have been a pattern of 'persistent and widespread' unconstitutional practices which became so 'permanent and well settled' as to have the effect and force of law." *Jane Doe A By & Through Jane Doe B v. Special Sch. Dist.*, 901 F.2d 642, 646 (8th Cir. 1990) (citing *Monell*, 436 U.S. at 691).  Here, Plaintiff's vague allegation that this purported "corral and combat" strategy was used "numerous" times during this period of unprecedented civil unrest cannot fairly be described as evidencing a practice that is "persistent and widespread." In fact, courts have routinely rejected custom claims premised on more frequent, *specific* instances of conduct.  *See, e.g. Mettler*, 165 F.3d at 1204 (noting that fifteen citizen complaints against deputies failed to establish an unofficial custom); *Brewington v. Keener*, 902 F.3d 796, 802 (8th Cir. 2018) (citing favorably to *Pineda v. City of Houston*, 291 F.3d 325, 329 (5th Cir. 2002) as concluding that eleven incidents of police misconduct were insufficient to establish an unconstitutional pattern).

8

Moreover, even if the Court determined that the purported "numerous" instances of the "corral and combat" strategy could be considered persistent and widespread, the complaint is wholly devoid of any factual allegations that the City was deliberately indifferent to or tacitly approved of the alleged tactic. *See Mick v. Raines*, 883 F.3d 1075, 1080 (8th Cir. 2018) (dismissing custom claim because plaintiff did not "identify a sufficient number of unconstitutional acts to support an inference of deliberate indifference to employee misconduct" or to meet the "heavy burden required to establish municipal liability through an unofficial custom"). To be sure, the complaint formulaically asserts that the City was deliberately indifferent. (ECF 1 at ¶ 10, 21.) However, these conclusory legal assertions are insufficient to make out a custom claim. *Ashcroft v. Iqbal*, 556 U.S. at 678; *Wiles*, 280 F.3d at 870 (courts are free to ignore sweeping legal conclusions cast in the form of factual allegations); *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990). Absent the presence of any alleged facts, it would be pure speculation to assume that that the City was even aware these "numerous" incidents of purported use of force. Such speculation is legally insufficient to maintain any claim, let alone establish the stringent standard of fault required to show deliberate indifference. *Minnesota Majority*, 708 F.3d at 1055 (8th Cir. 2013) (explaining that a complaint must "contain facts with enough specificity 'to raise a right to relief above the speculative level.'"); *Shrum ex rel. Kelly v. Kluck*, 249 F.3d

9

773, 780 (8th Cir. 2001) (applying a stringent standard of fault to the deliberate indifference requirement of a custom claim).  As such, any attempt by Plaintiff to sustain a *Monell* claim based on a purportedly unconstitutional custom fails as a matter of law.

### B.   Plaintiff has failed to state a viable conspiracy claim.

Though it is not formally pled in the complaint, Plaintiff appears to allege the existence of a conspiracy between the City and/or one or more of the John Doe defendants. (ECF 1 at ¶ 42.) Any conspiracy claim by Plaintiff, pled or unpled, fails as a matter of law. The elements of a 42 U.S.C. § 1983 conspiracy claim are: (1) that the defendant conspired with others to deprive Plaintiff of his or her constitutional rights; (2) that at least one of the alleged co-conspirators engaged in an overt act in furtherance of the conspiracy; and (3) that the overt act injured the plaintiff. *White v. McKinley*, 519 F.3d 806, 814 (8th Cir. 2008).  A plaintiff must also prove a predicate deprivation of a constitutional right in order to prevail on a § 1983 civil conspiracy claim.  *Id.* Here, Plaintiff's purported conspiracy claim can be swiftly disposed of, because Plaintiff wholly fails to satisfy the first element of a conspiracy claim against the City – that the City conspired with others for the purpose of depriving Plaintiff or others of their constitutional rights.

For a complaint to show that the defendants conspired, "the plaintiff must *allege with particularity* and specifically demonstrate with material facts that the

defendants reached an agreement." *Bonenberger v. St. Louis Metropolitan Police Dept.*, 810 F.3d 1103, 1109 (8th Cir. 2016)(emphasis added); *see also Reasonover v. St. Louis Cty.*, 447 F.3d 569, 582 (8th Cir. 2006) (explaining that plaintiff must allege with particularity "facts that the defendants reached an agreement"). Put another way, a conspiracy claim "requires allegations of specific facts tending to show a 'meeting of the minds' among the alleged conspirators." *Murray v. Lene*, 595 F.3d 868, 870 (8th Cir. 2010).

Here, Plaintiff does not allege a *single fact* that could directly or indirectly suggest a meeting of the minds between the City and/or any of the purported John Doe defendants. Instead, Plaintiff offers only the conclusory allegation that the City and one of more of the John Doe defendants acted "in concert". (ECF 1 at ¶ 42.) This allegation, however, amounts to no more than a recitation of an element of a conspiracy claim, and, consequently, fails to meet basic pleading requirements. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (stating that conclusory allegations are insufficient to withstand Rule 12 motion); *Spencer v. Federal Prison Camp Duluth*, 2016 WL 4942037, at *30 (D. Minn. 2016) ("Conclusory allegations [for a conspiracy claim] do not suffice.")(citing to *Manis v. Sterling*, 862 F.2d 679, 681 (8th Cir. 1988)); *Murrin v. Fischer*, 2008 WL 540857, at *23 (D. Minn. 2008) ("[W]here a plaintiff offers only conclusory allegations of a conspiracy against a party, the claim is adjudged to have been insufficiently pled, and is

subject to dismissal.")(citing to *Snelling v. Westhoff*, 972 F.2d 199, 200-01 (8th Cir. 1992)).

The complaint contains no factual allegations whatsoever of what the City and the John Doe defendants purportedly agreed upon, how the City purportedly acted in concert with the John Doe defendants, or what those concerted actions entailed.  Put differently, the complaint is entirely devoid of any specific, material facts tending to show that the City came to any agreement with the John Doe defendants, let alone a more specific plan to deprive Plaintiff or other protestors of their constitutional rights.  Without a single factual allegation, Plaintiff's generic allegation that the City acted in concert with one or more of the John Doe defendants is nowhere near the "plausible" standard that must be met in pleading a conspiracy. *Lawrence v. City of St. Paul*, 740 F. Supp. 2d 1026, 1050 (D. Minn. 2010). (citing *Twombly*, 550 U.S. at 570.) As such, Plaintiff's conspiracy claim fails as a matter of law.

## III.   PLAINTIFF'S COMPLAINT FAILS TO ALLEGE THAT PLAINTIFF OR THE PUTATIVE CLASS HAVE STANDING TO SEEK INJUNCTIVE RELIEF.

Plaintiff's complaint seeks equitable relief for herself and members of the putative class.  (ECF 1 at ¶ 23, 47.)  Where a complaint fails to allege standing for the sought-for equitable relief, dismissal is appropriate pursuant to Fed. R. Civ. P. 12(b)(1) as the Court lacks subject-matter jurisdiction.  *ARRM v. Piper*, 367 F. Supp.

12

3d 944, 950-51 (D. Minn. 2019) (citations omitted). Standing requires that (1) a plaintiff has suffered an injury in fact; (2) there is a causal connection between the injury and the conduct of the defendant; and (3) it is likely that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). Plaintiff has failed to allege that she or the putative class have standing to bring a claim for injunctive relief.

A plaintiff seeking injunctive relief must demonstrate that the risk of a future injury is of a sufficient likelihood; past injury alone is insufficient to establish standing for prospective relief. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 105-06 (1983).  In the case at hand, the possibility that unprecedented civil unrest will recur in Minneapolis, that Plaintiff or members of the putative class will choose to protest and that they will possibly be harmed is far too speculative to establish standing.  The case of *Elend v. Basham* is instructive on this issue.  471 F.3d 1199 (11th Cir. 2006).

In that case, the plaintiffs were individuals who had intended to protest outside of an arena hosting a political rally attended by then-President George W. Bush.  They were relegated by the Secret Service to a "First Amendment Zone" a quarter mile away from the rally venue. *Id.* at 1202-03.  Plaintiffs alleged that this violated their First Amendment rights and brought an action for injunctive and declaratory relief.  *Id.*  Specifically, the plaintiffs alleged that in the future they

planned to continue protesting in a similar manner at presidential appearances there and around the country. *Id.* at 1206. The Eleventh Circuit ruled that they did not have standing to bring the claims as their possibility of future injury was too speculative. *Id.* at 1206-07. "To find that [Plaintiffs future intent to protest in a similar manner around the country] somehow constitutes 'real and immediate' injury sufficient to confer standing would eviscerate the meaning of both words." *Id.* at 1209.

Plaintiff in this case faces an even greater standing challenge, as she does not even allege a likelihood or intention to participate in future protests, eviscerating the possibility of future harm. Nonetheless, even if Plaintiff *had* made such an allegation, "[s]uch 'some day' intentions—without any description of concrete plans, or indeed even any specification of when the 'some day' will be—do not support a finding of the 'actual or imminent' injury that our cases require." *Lujan,* 504 U.S. at 564. Simply put, Plaintiff alleges no plans or intention to attend protests in the future, and there is no reason to believe that Plaintiff here is sufficiently likely to suffer further injuries to her constitutional rights to warrant injunctive relief. Nor is there *any* allegation that the putative class members have any intention to protest again in the future and therefore, no basis on which to find they are likely to suffer future harm. This is not an "injury" that confers standing to request injunctive relief.

14

Plaintiff and the putative class have also failed to plead that they will be able to obtain an appropriate remedy from this Court with injunctive relief. Plaintiff is requesting specifically that the Court issue an order "prohibiting Defendants, their officers, agents, employees, and successors, from engaging in the illegal practices complained of herein." (ECF 1 at 10 (*wherefore* clause 4).)  Plaintiff and the putative class members lack standing to seek this relief as they lack both an injury and a remedy in the context of their equitable claims. Such a generic, conclusory injunction is meaningless on its face. Refining it further would also be futile because, as discussed *infra*, each instance of alleged unlawful force needs to be analyzed under the totality of the circumstances. *See Graham v. Connor*, 490 U.S. at 396.  As each future use of force must be assessed under the specific and total facts of the situation, all the Court could order is an injunction for officers to follow the Constitution, which is not a proper use of the Courts' equitable powers. *Barrera v. U.S. Dep't of Homeland Sec.*, No. CIV 07-3879 (JNE/SRN), 2009 WL 825787, at *9–10 (D. Minn. Mar. 27, 2009) (citations omitted).  Accordingly, Plaintiff has failed to allege that she has standing to pursue the injunctive relief she seeks.

As the Plaintiff does not have standing to seek injunctive relief, she cannot serve as the class representative.  *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974).  Even if Plaintiff had standing for injunctive relief, the potential class members still do not have standing for injunctive relief, and as the complaint solely seeks injunctive

15

relief for the class members, Plaintiff's class allegations should be dismissed on this basis alone.

## IV. PLAINTIFF'S CLASS ALLEGATIONS ARE INSUFFICIENT TO SUPPORT A CLASS ACTION UNDER FED. R. CIV. P. 23(a).

Plaintiff alleges that she is seeking monetary, injunctive, and declaratory relief on behalf of any protestors who were injured by the MPD. (ECF 1 at ¶¶ 23, 24.) "The class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011) (citations and quotation marks omitted). A plaintiff must demonstrate that each element of Fed. R. Civ. P. 23 is satisfied. *See Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 158-61 (1982). Where a plaintiff's complaint, on its face, demonstrates that the plaintiff cannot satisfy the requirements of Rule 23, the Court may dismiss the plaintiff's class allegations. *Jarrett v. Panasonic Corp. of N. Am.*, 8 F. Supp. 3d 1074, 1089–90 (E.D. Ark. 2013); *see also Falcon*, 457 U.S. at 160. Here, Plaintiff's allegations clearly show that she could not satisfy the requirements of Fed. R. Civ. P. 23 and is not entitled to bring a class action.

Fed. R. Civ. P. 23 provides that any class must meet the criteria of Rule 23(a), requiring that the claims of the Plaintiffs must be "typical of the claims" of the class and that there must be "questions of law or fact common to the class." Plaintiff's complaint states that she is seeking class certification under Fed. R. Civ. P. 23(b)(1)(B) and 23(b)(2) which add additional requirements. Fed. R. Civ. P.

16

23(b)(1)(B) allows class certification where "prosecuting separate actions by or against individual class members would create a risk of . . . adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests[.] Fed. R. Civ. P. 23(b)(2) provides that class certification may be granted where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  While the former would allow for monetary relief, the latter allows for only injunctive or declaratory relief. *See* Fed. R. Civ. P. 23(b)(1)(B) & (b)(2).

Plaintiff's allegations of excessive force and First Amendment retaliation during the course of the protests are by their very nature incompatible with a class action, and the class action claims should be stricken.  On its face, the complaint establishes there are no common questions of law amongst all the putative class members, nor are the claims of the named Plaintiff typical of the claims of the class.

### A.   There are no questions of law common to the class.

To certify a class there must be "questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  Though a plaintiff may craft questions which appear on their face to generally apply to the members of the class, this is

17

insufficient to meet this commonality requirement, nor is it enough that a plaintiff alleges that the class have all suffered a violation of the same law. *Dukes*, 564 U.S. at 349, 350. Rather "[Plaintiffs'] claims must depend upon a common contention . . . . That common contention, moreover, must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* Here, Plaintiff has proposed four questions of law that she claims are common to the class:

- Whether Defendants acted in violation of the protestors' civil rights;

- Whether the Defendants committed acts of unnecessary force;

- Whether the Defendants committed acts of police brutality;

- Whether individuals have suffered harm sufficient to bring their claims in court.

(ECF 1 at ¶ 32.)

Notably, Plaintiff does not allege that "the City" as an entity directly used force or "brutality", *i.e.*, used chemical irritant on her, or that the City violated her civil rights. Whether the City's officers used greater force than was necessary or acted in a way that violated an individual's civil rights are questions that cannot be answered for the hundreds of putative class members in one stroke. The reasonableness of the use of force must be judged from the "perspective of a

reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham v. Connor*, 490 U.S. at 397 (quoting *Terry v. Ohio*, 392 U.S. 1, 20-22 (1968)). When evaluating an officer's use of force, a court must pay "careful attention to the facts and circumstances of [the] particular case . . . ." *Id.* at 396.  Additionally, each officer's use of force should be assessed independently.  *Smith v. City of Minneapolis*, 754 F.3d 541, 547–48 (8th Cir. 2014).

Here, the complaint alleges only *one* distinct factual scenario that purportedly constitutes unlawful uses of force in violation of Plaintiff's civil rights and alludes to an unknown number of other situations where police tried to "corral and concentrate" protestors. In order for the claims of the putative class members to be properly evaluated, each plaintiff's situation would need to be analyzed individually in order to determine whether the force used in that situation by the officer was reasonable and/or if that Plaintiff suffered a civil rights violation.   To meet the commonality requirement, it is not enough to raise "common questions" but rather, a class proceeding must be able to generate "common *answers*."   *Dukes*, 564 U.S. at 350 (quotation omitted). There is no common answer to the question of whether the City's agents used unreasonable force against members of the putative class here, a class consisting of anyone injured as a result of the unknown actions of unknown Minneapolis Police

Officers. Answers could only be obtained by assessing each use of force independently for each individual plaintiff.

Plaintiff's remaining question, regarding whether the individual class members have suffered harm sufficient to bring their claims in court, is also inconsistent with class certification. In order for the purported injuries of the putative class members to be properly evaluated, each plaintiff's situation would once again need to be analyzed individually to determine the harm suffered by that member. There is no common answer to the question of what harm was suffered by purported class members, and answers could only be obtained by assessing each purported injury independently.

### B. Each alleged unconstitutional encounter with an MPD officer must be analyzed on its own facts; Plaintiff cannot show her claims are typical of the class.

Federal Rule of Civil Procedure 23(a)(3) requires that a plaintiff show that the "claims or defense of the representative parties are typical of the claims or defenses of the class." Plaintiff must demonstrate "that there are other members of the class who have the same or similar grievances as the plaintiff." *Donaldson v. Pillsbury Co.*, 554 F.2d 825, 830 (8th Cir. 1977) (citation and quotation marks omitted). Class claims that require each individual incident to be individually analyzed cannot meet the typicality requirement. *Elizabeth M. v. Montez*, 458 F.3d 779, 786-87 (8th Cir. 2006). Here, Plaintiff and the putative class have alleged two

types of constitutional violations, excessive force and First Amendment retaliation. By their very nature these types of claims are entirely dependent on the facts of each situation and cannot meet the class typicality requirement.

To establish a constitutional violation under the Fourth Amendment, a plaintiff must prove that the amount of force used was objectively unreasonable under the totality of the circumstances. *Graham v. Connor*, 490 U.S. at 396. "Use of excessive force is an area of the law 'in which the result depends very much on the facts of each case[.]'" *Kisela v. Hughes*, 138 S. Ct. 1148, 1153 (2018) (citation omitted). As discussed, *supra*, given that every use of force must be assessed on the totality of the circumstances, there is no way that Plaintiff's individual claims could be decided as a group.

"To establish a First Amendment retaliation claim under 42 U.S.C. § 1983, the plaintiff must show (1) he engaged in a protected activity, (2) the government official took adverse action against him that would chill a person of ordinary firmness from continuing in the activity, and (3) the adverse action was motivated at least in part by the exercise of the protected activity." *Revels v. Vincenz*, 382 F.3d 870, 876 (8th Cir. 2004) (citation omitted). When the "adverse action" alleged is the use of excessive force, the threshold issue is whether the force was excessive at all, because if there was no excessive force then the claim for First Amendment retaliation also fails. *Burbridge*, 430 F.Supp.3d at 614. (plaintiff whose excessive

21

force claim had been dismissed could not sustain a First Amendment retaliation claim for the use of that force).  Under the causation prong, a plaintiff must show that the retaliatory motive was a "substantial factor" or "but-for cause" of the adverse action. *Baribeau v. City of Minneapolis*, 596 F.3d 465, 481 (8th Cir. 2010). "In other words, the plaintiff must show he was singled out because of [his] exercise of constitutional rights." *Peterson v. Kopp*, 754 F.3d 594, 602 (8th Cir. 2014) (quotation omitted).  This requires weighing the evidence about the motivation of the particular officer who was allegedly retaliating.  *Id.* at 602-03.  Currently, Plaintiff has only alleged a single incident of retaliation. Practically, however, each incident that a putative class member may eventually allege will need to be separately analyzed to determine if the officer had a retaliatory motive, as they very possibly could have occurred on different days, in different situations, presumably with different officers and that is only *if* each individual instance is first found to be a use of excessive force.

## C.    Certification Is Inappropriate Under Fed. R. Civ. P. 23(b)(1)(B)

Fed. R. Civ. P. 23(b)(1)(B) allows class certification where "prosecuting separate actions by or against individual class members would create a risk of . . . adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to

protect their interests[.]  This is often used in situations involving "an action which charges a breach of trust by an indenture trustee or other fiduciary similarly affecting the members of a large class of security holders or other beneficiaries, and which requires an accounting or like measures to restore the subject of the trust." *Krueger v. Ameriprise Fin., Inc.*, 304 F.R.D. 559, 578 (D. Minn. 2014) (quoting Fed. R. Civ. P. 23, Advisory Committee notes (1966 Amendment)). That is simply nothing like the case at hand.  As already discussed, there is such inherent individuality in each case when analyzing the use of force or First Amendment retaliation, there can be no risk that an adjudication with regard to Plaintiff will affect the rights of a putative class member who was injured by the MPD on some other occasion in some other location.  It is impossible, on the face of the complaint, to certify a class under Fed. R. Civ. P. 23(b)(1)(B).

**D.      Certification Is Inappropriate Under Fed. R. Civ. P. 23(b)(2).**

Plaintiff pleads Fed. R. Civ. P. 23(b)(2) as a basis for class certification, but the Complaint shows she cannot meet that Rule's requirements. A Rule 23(b)(2) class may proceed on the theory that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final . . . relief is appropriate respecting the class as a whole[.]"  "The key to the (b)(2) class is 'the indivisible nature of the injunctive or declaratory remedy warranted – the notion that the conduct is such that it can be enjoined or declared unlawful only as to all

of the class members or as to none of them.'"  *Dukes*, 564 U.S. at 360 (quotation omitted).  The Eighth Circuit has explained that a class is not suitable for 23(b)(2) certification when the defendant's "conduct cannot be evaluated without reference to the individual circumstances of each plaintiff." *Harris v. Union Pacific Railroad Company*, 953 F.3d 1030, 1038 (8th Cir. 2020).  As discussed, *supra*, the claims of the putative class members cannot be assessed as a unit because each incident must be assessed on its own facts before there can be a finding that a class member was subject to a constitutional violation at all. To date, Plaintiff has only identified a single incident, and yet defines the class as consisting of all protestors that have been injured by the MPD. The scope of such incidents would inherently extend over such a wide range of circumstances, Plaintiff cannot meet the requirement that the City "acted or refused to act on grounds that apply generally to the class."

## <u>CONCLUSION</u>

The City respectfully requests that the Court dismiss the City from this lawsuit with prejudice as the express claims and the *Monell* allegations are insufficient on the face of the complaint. The City also request that the Court dismiss the class allegations from the complaint as the putative class members do not have standing to pursue any equitable relief and, on the face of the complaint, the allegations are incompatible with class certification.

Dated: November 19, 2020

JAMES R. ROWADER, JR.
City Attorney
By */s Sharda Enslin*
KRISTIN R. SARFF (0388003)
SHARDA ENSLIN (0389370)
HEATHER P. ROBERTSON (0390470)
Assistant City Attorneys
350 South Fifth Street, Room 210
Minneapolis, MN 55415
(612) 673-3919
(612) 673-2180
(612) 673-3949
kristin.sarff@minneapolismn.gov
sharda.enslin@minneapolismn.gov
heather.robertson@minneapolismn.gov

*Attorneys for Defendant*
*City of Minneapolis*